UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

AKO K. BURRELL, et al.,

                              Plaintiffs,

              v.                                                    9:22-CV-0702
                                                                    (DNH/ATB)

DOCCS, et al.,

                              Defendants.

_____

APPEARANCES:

AKO K. BURRELL
Plaintiff, pro se
17-B-2994
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

**I.  INTRODUCTION**

        The Clerk has sent to the Court for review a complaint filed by pro se plaintiff Ako K.

Burrell ("Burrell" or "plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims

arising out of his confinement in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS").  Dkt. No. 1 ("Compl.").

        Burrell has not paid the filing fee for this action and seeks leave to proceed in forma

pauperis ("IFP").  Dkt. No. 3 ("IFP Application").  Plaintiff has also filed a motion for a

preliminary junction and a motion for class certification.  Dkt. Nos. 5, 6.

## II.  IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[1]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Burrell's IFP Application, the Court finds that he has demonstrated sufficient economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate authorization form required in this District.  *See* Dkt. No. 4.  Accordingly, the Court grants plaintiff's IFP Application.

## III.  SUFFICIENCY OF THE COMPLAINT

### A.  Standard of Review

Having found that Burrell meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e).  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall

---

[1]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review that plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).

The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state

---

[2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

**B.**  **Summary of the Complaint**[3]

Because plaintiff is proceeding pro se, the Court will construe the allegations in the complaint with the utmost leniency.  *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

Burrell purports to bring this action on behalf of himself and others similarly situated. In the 104-page complaint (and 343 pages of exhibits), plaintiff asserts claims against forty

---

[3]  The complaint includes exhibits.  *See* Dkt. No. 2.  To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

defendants related to wrongdoing that occurred, if at all, during plaintiff's incarceration at Upstate C.F.  *See generally* Compl.

On April 12, 2022, plaintiff arrived at Upstate C.F. Residential Rehabilitation Unit ("RRU").[4]  Compl. at ¶¶ 81, 113.  At the direction of defendants Uhler and Bishop, plaintiff was assigned to a double bunk cell.  *Id*. at ¶ 138.  Plaintiff claims that while confined in the RRU, he was deprived of access to the media, religious services, nutritious meals, recreation, programs, appearances at grievance hearings, showers, law library access, work assignments, televisions, hot pots, extension cords, and properly trained DOCCS personnel. *Id*. at ¶¶ 68-72, 82, 111, 180-183, 189.

Pursuant to a policy enforced by defendants Annucci, Uhler, Bishop, Bradsford, Bullock, and Dearbone, inmates in the RRU were required to share one electronic tablet.[5] Compl. at ¶¶ 81, 135.  This policy created "hostile" living conditions often resulting in physical altercations among the inmates.  *Id*. at ¶ 82.

From April 1, 2022 until May 2, 2022, Annucci, Bishop, Uhler, and Stickey refused plaintiff's request to hire an Imam, to provide prayer rugs, and denied him the use of his religious clothing during Ramadan.  Compl. at ¶ 193.  On April 18, 2022, plaintiff filed a grievance (UST - 0534-22) related to these requests and identified himself as Muslim.  *Id.*

---

[4]  The [Humane Alternatives to Long-Term Solitary Confinement] HALT Act created Residential Rehabilitation Units ("RRUs"), which are "therapeutic and trauma-informed, and aim to address individual treatment and rehabilitation needs and underlying causes of problematic behaviors."  *New York State Corr. Officers & Police Benevolent Association, Inc. v. Hochul*, No. 1:21-CV-535 (MAD/CFH), 2022 WL 2180050, at *1 (N.D.N.Y. June 16, 2022) (citing N.Y. Corr. Law §137(2)(34)).

[5]  A static tablet is an electronic device distributed by security staff to each incarcerated individual assigned to a SHU, at no cost, which has telephone access and contains a variety of preloaded applications, including educational material, videos, e-books, music, games, and other medica approved by the Department. N.Y. Dep't of Corr. & Cmty. Supervision, Directive 4933: Special Housing Units (Apr. 18, 2017), http://www.doccs.ny.gov/directives/4933.pdf.

On April 14, 2022, plaintiff questioned defendants Offender Rehabilitation Coordinators ("ORC") Fontain and Johnson about his release date.  Compl. at ¶¶ 115-116. Johnson and Fontain told plaintiff that he "was starting to bother them with his questions."  *Id*. at ¶¶ 117, 122.  Plaintiff filed a grievance (UST 0587-22) related to the incident.  Dkt. No. 2-9 at 20.

On April 16, 2022, plaintiff told defendants Uhler and Boile that he intended to begin a hunger strike.  Compl. at ¶ 151.  Plaintiff remained on a hunger strike for approximately two weeks.  *Id*. at ¶ 151.

On April 18, 2022, plaintiff wrote a letter to the Inmate Grievance Resolution Committee ("IGRC") claiming that defendant ORC Nelson refused to provide him with a copy of the facility guidelines and regulations.  Dkt. No. 2-8 at 27; Compl. at ¶¶ 127-128.

On April 29, 2022, defendants Fontain, Johnson and Nelson coerced plaintiff into signing an Individual Rehabilitation Plan that did not conform with his treatment needs. Compl. at ¶ 139.

On April 30, 2022, defendant Bullock interviewed plaintiff regarding his grievances. Compl. at ¶ 143; Dkt. No. 2-8 at 19.  Bullock used racial slurs and hostile language.  *Id*.  On May 2, 2022, plaintiff filed a grievance (UST 0680-22) related to the interaction.  Dkt. No. 2-8 at 19.

On May 12, 2022, defendants Bullock, C.O. Niles, C.O. Sawyer, and Rowe placed plaintiff on a suicide watch under "false pretenses."  Compl. at ¶¶ 86, 94, 144; Dkt. No. 2-8 at 16-18.  Bullock ordered Niles, Sawyer, and Rowe to search plaintiff's cell for grievances. Compl. at ¶ 144.  As a result, plaintiff's legal work and property were destroyed.  *Id*., Dkt. No. 2-8 at 16-18.

On May 17, 2022 and May 18, 2022, plaintiff wrote letters to the IGRC and a grievance (UST 0747-22) claiming that Bullock refused to return his property.  Dkt. No. 2-8 at 16, 17, 39.

On May 18, 2022, defendant Ozborne refused to allow plaintiff to attend programming.  Compl. at ¶ 145.  Ozborne stated, "Bullock already told us who you are[.]"  *Id.*

On May 19, 2022, defendant Hastings came to plaintiff's cell and attempted to bend plaintiff's wrist while applying handcuffs.  Compl. at ¶ 148.  Defendant Spinner, who was also present, told plaintiff they were ordered to "cut[] [him] up [. . .] you got a problem grieving[.]"  *Id.*  Hastings "smashed" plaintiff in the face.  *Id.* at ¶ 149.  Once they arrived in the "10 Building sally port", defendant Mainville choked plaintiff, "rammed plaintiff into a corner" and Hastings "inserted his fingers in plaintiff's anus."  *Id.* at ¶¶149, 174.  Spinner issued a misbehavior report accusing plaintiff of assaulting Mainville.  Compl. at ¶ 149.

On May 26, 2022, Nelson conducted a "hearing."  Compl. at ¶ 91.  Nelson denied plaintiff's requests for legal assistance and witnesses and removed plaintiff from the hearing "without good cause."  *Id*.  Nelson sentenced plaintiff to sixty days without tablet use and a corresponding loss of good time and stated," since you like writing grievances, then the loss of this static tablet will cure that."  *Id*.

On June 2, 2022, Nelson conducted another hearing and denied plaintiff's requests for witnesses, documentary evidence, and legal representation.  Compl. at ¶ 92-93.  Nelson sentence plaintiff to a loss of tablet use "because he liked filing grievances."  *Id*. at ¶ 93.  Defendant Rodriguez affirmed the "guilty dispositive sanctions."  *Id.*

On June 3, 2022, defendant Hess conducted a Program Management Team ("PMT")

review in plaintiff's absence.  Compl. at ¶¶ 100, 103, 202.  At the conclusion of the hearing, Hess denied plaintiff all services.  *Id.*

On June 9, 2022 and June 10, 2022, Uhler issued orders depriving plaintiff of the use of the law library tablet, blankets, and paper.  Compl. at ¶ 112, Dkt. No. 2-8 at 6-8, 9.

On June 16, 2022, defendant Dearbone denied plaintiff a PMT review.  Compl. at ¶ 101.

Construed liberally,[6] the complaint contains the following: (1) Eighth Amendment claims; (2) Fourteenth Amendment claims; (3)  First Amendment claims; (4) claims related to violations of DOCCS directives; (5) conspiracy claims; (6) claims related to the grievance process; and (7) state law claims.  *See generally* Compl.  Plaintiff seeks declaratory, injunctive, and monetary relief.  *See id.* at pp. 101-102.

### C.  <u>Nature of Action</u>

Burrell seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself

---

[6]  The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496,501 (2d Cir. 1994). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability."). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id*. (quoting *Iqbal*, 556 U.S. at 676).

## IV.  ANALYSIS

### A.  Preliminary Issues

### 1.  Eleventh Amendment

As an initial matter, Burrell's claims for monetary damages against DOCCS and "Central Office" are barred by sovereign immunity principles.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of

"sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890).

Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996).  Actions for damages against a state official in his or her official capacity are essentially actions against the state.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Thus, Burrell's claims for monetary damages against DOCCS and "Central Office" are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  *See Rother v. Dep't of Corr. and Cmty. Supervision*, 970 F.Supp.2d 78, 89–90 (N.D.N.Y. 2013) (holding that DOCCS is a New York State agency that has immunity under the Eleventh Amendment); *Houston v. Goord,* No. 9:03-CV-1412 (LEK/DEP), 2006 WL 2827163, at *5 (N.D.N.Y. Sept. 29, 2006) (holding that

"the CORC is clearly an agency of the State," and subject to Eleventh Amendment protection) (citation omitted).

### 2. **Rule 10**

Burrell's allegations against any individual who is not named or identified in the caption or list of parties must also be dismissed.  Throughout the complaint, plaintiff refers to various individuals as "defendants", who are not named or identified in the caption, or list of parties, as defendants.  *See* Compl. at ¶¶ 98, 106, 143, 164-172, 207; Dkt. No. 2-8 at 28, 37.

Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  A party not named in the caption of the complaint is not a party to the action.  *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Over the past eight years, plaintiff has filed nine actions in this District.[7]  A review of the docket reports for these actions reveals that plaintiff is well aware of the pleading requirements for a Section 1983 action.  Accordingly, plaintiff's allegations against any individual who is not named or identified in the caption or list of parties are dismissed for failure to state a claim.  *See Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1

---

[7] *Burrell v. The County of Oneida, et al.*, No. 9:14-CV-200 (BKS/RFT); *Burell v. Zurek, et al.*, No. 9:17-CV-906 (LEK/TWD); *Burrell v. Oneida County, et al.*, No. 9:19-CV-305 (BKS/CFH);  *Burrell v. Maciol, et al.*, No. 9:19-CV-160 (TGM/DJS); *Burrell v. Sweeney et al.*, No. 9:21-CV-1165 (GTS/CFG); *Burrell v. Durkin et al.*, No. 9:22-cv-00102 (BKS/ML); *Burrell v. Central New York Psychiatric Center et al.* No. 9:22-CV-00344 (GLS/ATB); *Burrell v. Annucci et al.*, No. 9:22-CV-00701 (GTS/ATB); and *Burrell v. Bell et al*, No. 9:22-cv-00770 (GLS/TWD).

n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them.").

### B.  Eighth Amendment

#### 1.  Conditions of Confinement

Burrell's Eighth Amendment claims related to his conditions of confinement must also be dismissed.  While the United States Constitution " 'does not mandate comfortable prisons,' . . . neither does it permit inhumane" treatment of those in confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468,480 (2d Cir. 1996) (citation omitted).  To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.'" *Id*. (citation omitted). "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted).  To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

Burrell claims that while confined in a double-bunk in the RRU, he was deprived of access to the media, the static tablet, religious services, nutritious meals, recreation, programs, appearances at grievance hearings, showers, law library access, work assignments, televisions, hot pots, extension cords, and properly trained DOCCS personnel. Compl. at ¶¶ 68-72, 82, 111, 180-183, 189. Plaintiff also claims he sustained physical injuries as a result of physical altercations with other inmates related to defendants' "tablet policies." *Id.* at ¶ 82.

While the complaint is 104-pages in length, the allegations related to plaintiff's conditions of confinement in the RRU, which are repetitious, are asserted in wholly conclusory terms without dates or facts related to the frequency of the deprivations or incidents. Moreover, even assuming the conditions of plaintiff's RRU confinement satisfied the objective prong of the Eighth Amendment analysis, the complaint lacks facts suggesting that any named defendants were deliberately indifferent.

As discussed *supra*, to state a cognizable Section 1983 claim, a complaint must allege the personal involvement of each of the defendants named. Additionally, Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint include sufficient allegations to provide "each defendant fair notice of what the plaintiff's claim is and ground upon which it rests." *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (internal quotation marks omitted); *see Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

Burrell makes sweeping and general complaints about his conditions of confinement, but does not allege any specific involvement by any named defendant. "[P]laintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations." *5465 Route 212, LLC v. New York State Dep't of Transportation*, No. 1:19-CV-

13

01510 (BKS/DJS), 2020 WL 6888052, at *9 (N.D.N.Y. Nov. 24, 2020).  As presently plead, plaintiff's allegations regarding his conditions of confinement in the RRU are simply too vague to provide any sort of notice of a claim against any particular defendant.  *See Atuahene*, 10 Fed. App'x at 34 ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff]'s complaint failed to satisfy th[e] minimum standard [set forth in Rule 8].").

Accordingly, plaintiff's Eighth Amendment claims related to his conditions of confinement are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim.

### 2. Hunger Strike

Burrell alleges that defendants violated the Eighth Amendment during his self-imposed, fourteen day hunger strike.  "Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death."  *Sawyer v. Prack*, No. 9:14-CV-1198 (DNH/DEP), 2014 WL 12923403, at *7 (N.D.N.Y. Dec. 31, 2014) (citing *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011)).  "[I]f weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern."  *Id*. (citations omitted).

Although Burrell declared his intention to begin a hunger strike to Uhler and Boile, plaintiff does not identify any defendant who was personally involved in his medical treatment or decisions related to his hunger strike.  Moreover, he has not alleged that he suffered any injury as a result of his hunger strike.  Plaintiff's vague allegations of weight loss are

14

insufficient to sustain this claim.  *See Sawyer*, 2014 WL 12923403, at *7.  Accordingly, these claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim.

### 3.  **Excessive Force and Failure to Intervene**

Burrell's Eighth Amendment excessive force and failure-to-intervene claims against Hastings, Spinner, and Mainville survive initial review.

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr*., 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 832).  Law enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence.  *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001);

*see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Hastings, Spinner, and Mainville require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### C.  Fourteenth Amendment - Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const., amend. XIV.  To show a procedural due process violation in a Section 1983 action, a plaintiff must demonstrate that he had a protected liberty interest and that he was deprived of that liberty interest without due process of law.  *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000).

A prisoner's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement.  *See, e.g., LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin*, No. 94-CV-0985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001).  Accordingly, to find that

16

plaintiff's complaint states a cognizable procedural due process claim, the Court must inquire whether the allegations related to the conditions of plaintiff's confinement rise to the level of an atypical and significant hardship under *Sandin*.

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility, as well as those in administrative and protective confinement. *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (quoting Sandin, 515 U.S. at 484)).

Plaintiff alleges due process violations against Nelson, Rodriguez, and Uhler.

### 1. Claims Against Nelson and Rodriguez

Plaintiff's due process claims related to the May 2022 and June 2022 hearings conducted by Nelson are too vague to warrant a response. The complaint lacks any facts related to what type of hearings were held or the reason for the hearings. Moreover, even assuming the hearings were disciplinary in nature, the sentences imposed by Nelson; i.e. loss of table use, does not implicate a liberty interest sufficient to invoke the due process clause. *See Griffin v. Cleaver*, No. 03-CV-1029, 2005 WL 1200532, at *6 (D. Conn. May 18, 2005) (citing cases); *Hall v. McCabe*, No. 11-CV-1317, 2011 WL 5083219, at *2 (D.S.C. July 8, 2011); *Howell v. Hall*, No. CV 317-001, 2017 WL 939016, at *3 (S.D. Ga. Feb. 14, 2017) ("the Court does not find restricted access to a tablet imposes an atypical and significant hardship"), *report and recommendation adopted*, 2017 WL 937969 (S.D. Ga. Mar. 9, 2017).

17

Accordingly, the Court dismisses plaintiff's due process claims against Nelson and Rodriguez without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Deprivation Order

Burrell claims that Uhler violated the due process clause when he issued orders depriving plaintiff of recreation, towels, paper, and the law library tablet.  Dkt. No. 2-8 at 5-9. The orders related to recreation, towels, and paper expired after seven days and, as such, the deprivations were not sufficiently atypical to implicate a protected liberty interest.  *See Beckford v. Portuondo*, 151 F.Supp.2d 204, 219 (N.D.N.Y. 2001) (finding no due process violation related to deprivations on the plaintiff's diet, water, and cell shield that did not exceed a week).  While the complaint does not clearly indicate how long plaintiff was deprived of the use of the law library tablet, as discussed *supra*, inmates do not have a protected liberty interest in tablet use.

Accordingly, the Court dismisses plaintiff's due process claims related to the deprivation orders without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. First Amendment Religious Claims

Plaintiff, who identifies as Muslim, claims Annucci, Bishop, Uhler, and Stickey refused to provide his prayer rugs or religious clothing during Ramadan.  Compl. at ¶ 193; Dkt. No. 2-9 at 9.  Plaintiff also claims that Boile refused to provide Ramadan meals.  *Id.*

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections

18

system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell*, 417 U.S. at 822).  "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system."  *Id*. (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) ).

If a prisoner asserts a First Amendment violation based on a free exercise claim, a court must evaluate (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 925-26 (2d Cir. 1988).

A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[8]  A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature.  *Ford*, 352

---

[8]  The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim).  In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

F.3d at 590.  A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996).

Burrell's complaint lacks facts to plausibly suggest Burrell's religious beliefs were "substantially burdened."  Plaintiff has not alleged facts related to when or for how long he was deprived of his right to practice this religion.  Instead, the complaint contains only vague accusations without any specified dates, times, or facts that might establishing how Burrell was burdened.

These allegations, without more, fail to plausibly suggest that defendants burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment religious claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E.  First Amendment - Retaliation

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Burrell has sufficiently alleged that he engaged in protected conduct when he filed grievances and forwarded letters to the IGRC.  *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also King v. McIntyre*,

No. 9:11-CV-1457 (DNH), 2015 WL 1781256, at *13 (N.D.N.Y. Apr. 8, 2015) (finding that a written letter of complaint to a superior officer is "at least arguably protected conduct") (citation omitted); *see also Pilorge v. Panzarella*, No. 12 CIV. 6459, 2013 WL 4527348, at *3 (S.D.N.Y. Aug. 27, 2013) (finding that a written letter to the IGRC is "arguably" protected activity).

With respect to the second and third elements, the Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill,* 389 F.3d at 381 (emphasis in original). The "objective test applies even where a particular plaintiff was not himself subjectively deterred" from exercising his rights. *Id*.

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001).  While there is no "bright line ... defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection. *Grant v. Bethlehem Steel Corp*., 622 F.2d 43, 45–46 (2d Cir. 1980); *but see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239

F.3d at 491.

### 1.  **Claims Against Fontain, Johnson, and Nelson**

Burrell alleges Fontain, Johnson, and Nelson coerced plaintiff into signing an Individual Rehabilitation Plan that did not conform with his treatment needs in retaliation for grievances and complaints filed against them.  Plaintiff also claims that Nelson sentenced him to a loss of tablet use and a corresponding loss of good time in retaliation for grievances filed against her.  At this juncture, plaintiff has sufficiently alleged retaliation claims against Fontain, Johnson, and Nelson to require a response.  This is not a ruling on the merits and the Court expresses no opinion whether this claim can survive a properly filed motion to dismiss or for summary judgment.

### 2.  **Claims Against Bullock, Niles, Sawyer, Rowe, Ozborne, Hastings, Mainville, and Spinner**

Burrell claims that the following adverse actions were taken in retaliation for plaintiff's grievances:

> •   On May 12, 2022, Bullock, Niles, Sawyer, and Rowe admitted plaintiff to a suicide watch and destroyed his property;
>
> •   On May 18, 2022,Ozborne refused to allow plaintiff to attend programming;
>
> •   On May 19, 2022, Hastings and Mainville used excessive force and Spinner failed to intervene and issued a false misbehavior report.

At this juncture, plaintiff has sufficiently plead retaliatory animus to suggest a causal connection between protected conduct and the aforementioned adverse actions to require a response.  *See Baskerville v. Blot*, 224 F.Supp.2d 723, 733 (S.D.N.Y. 2002) (finding that a

22

defendant's alleged comment during an assault, "you want to file lawsuits and grievances, you're nothing but a coward," and comments after pointed to a retaliatory animus); *see also Mack v. Wood*, No. 9:17-CV-1146 (BKS/ATB), 2019 WL 5197230, at *7 (N.D.N.Y. July 26, 2019) (finding that alleged comments regarding grievances made during and immediately after an alleged assault, "reveal a specific and directed retaliatory motivation for [the defendant's] actions") (citations omitted), *report and recommendation adopted*, 2019 WL 4183894 (N.D.N.Y. Sept. 4, 2019).  This is not a ruling on the merits and the Court expresses no opinion whether this claim can survive a properly filed motion to dismiss or for summary judgment.

### F.  Claims Related to Violations of DOCCS Directives

Plaintiff alleges that Uhler, Bishop, Nelson, St. Mary, and Annucci failed to comply with DOCCS directives related to Superintendent's Hearings.[9]  Compl. at ¶¶ 25, 26, 107, 184. Burrell also alleges that Hess and Dearborne violated DOCCS Directives related to PMT reviews.[10]  *See id*. at ¶ 74.

A Section 1983 claim brought in federal court is not the appropriate vehicle by which to raise violations of prison regulations.  *See Hyman v. Holder*, No. 96-CV-7748, 2001 WL

---

[9]  Pursuant to New York Codes, Rules, and Regulations, "[t]he person appointed to conduct the superintendent's hearings shall be either the superintendent, a deputy superintendent, captain or commissioner's hearing officer employed by the department's central office."  N.Y. Comp. Codes R. & Regs. tit. 7, § 254.1

[10]  Pursuant to DOCCS Directives:

The PMT shall conduct a meaningful review of an RRU participant minimally every 60-days to assess the person's progress and determine if the participant should be discharged from the unit for substantially completing their IRP goals, referred to another level of care, or shall continue their RRU participation. If the person is not discharged from the unit following a 60-day review, program and mental health staff shall specify in writing the reasons for the determination and the program, treatment, service, and/or corrective action required before discharge.

*See* DOCCS Directive No. 4933D (Sept. 2022), available at https://doccs.ny.gov/(last visited Sept. 27, 2022).

262665, at *6 (S.D.N.Y. Mar. 15, 2001) (holding that allegations of prison regulation violations "are not cognizable under [Section] 1983" because "Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles"); *see also Sanders v. Gifford*, No. 11-CV-0326, 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014) (holding that failure to follow a DOCCS directive does not give rise to a § 1983 claim).

Accordingly, the Court dismisses these claims with prejudice since the defects are substantive, rendering amendment futile. *See Cuoco*, 222 F.3d at 112.

### G. Conspiracy

Plaintiff claims defendants conspired to "cause an influx of violence," to discriminate against him, and to deny services. Compl. at ¶¶ 39, 160. To maintain a civil rights conspiracy action under Section 1983 or Section 1985, a plaintiff, at a minimum, "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003; *see also Dorsey v. Fisher*, No. 09-CV-1011, 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009).

Burrell does not allege any facts giving rise to a conspiracy, but instead makes conclusory statements that defendants conspired with each other. Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants.

Accordingly, the Court dismisses plaintiff's conspiracy claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which

24

relief may be granted.

**H. Claims Related to the Grievance Process**

"The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances."  *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369 (W.D.N.Y. 2005).  "However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[ ] not give rise to a cognizable [Section] 1983 claim." *Id.* at 370.

Accordingly, plaintiff's allegations related to the failure to process grievances does not rise to the level of a constitutional deprivation.  Accordingly, the Court dismisses those claims with prejudice since the defects are substantive, rendering amendment futile. *See Cuoco*, 222 F.3d at 112.

**I. State Law Claim**

Plaintiff claims that the SHU policies, implemented by defendants Uhler, Bishop, and Stickey, violated the provisions of the Corrections Law § 137(6)(i) (the "HALT Act").  Compl. at ¶ 83.

District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution.  28 U.S.C. § 1367(a) (2000).

The alleged violations of the HALT Act are parallel to Burrell's federal claims for deliberate indifference.  Because Burrell's federal claims for deliberate indifference are being

25

dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims at this early stage of the case. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). In the event plaintiff amends the complaint to state a valid claim for deliberate indifference, the Court will exercise jurisdiction over his state law claims.

## V. <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Burrell has also filed a motion seeking injunctive relief.  Dkt. No. 6.  Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010).  To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Id.* at 35; *Cacchillo v. Insmed, Inc*., 638 F.3d 401, 405–06 (2d Cir. 2011).

However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher.  *Cacchillo*, 638 F.3d at 406; *see also Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).  Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of

preliminary relief." *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted).  The district court has wide discretion in determining whether to grant a preliminary injunction.  *Moore*, 409 F.3d at 511.

The alleged violation of a constitutional generally satisfies a plaintiff's burden to demonstrate irreparable harm. *Jolly*, 76 F.3d 468, 482 (2d Cir. 1996).  However, "[i]rreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedies by an award of monetary damages."  *N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir.), *cert. dismissed sub nom. Allergan PLC v. N.Y. ex rel. Schneiderman*, 136 S. Ct. 581, 193 L.Ed. 2d 421 (2015) (citation and internal quotation marks omitted).

Furthermore, "to prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application for such relief were unrelated to claims asserted in the complaint and thus plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward"

"In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F.Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S.

825, 846–47 (1994)) (other citations omitted).

The injunction sought by Burrell is mandatory and therefore the "clear and substantial" showing of a likelihood of success standard will be used.  Burrell seeks an order prohibiting defendants from refusing to award his good time credit, denying him conditional release or RRU discharge, and refusing to conduct a time allowance or parole hearing.  *See generally* Dkt. No. 6.  Plaintiff also seeks an order compelling defendants to  adhere to New York State statutes and the Halt Act and to provide a television, recreation, showers, food packages, hot pot purchases, beard trimmers, use of tablets, extension cords, visitation, quality food, laundry, work assignments/programs, religious services and meals, medical/mental health treatment, and emails.  *See id.*

Injunctive relief is inappropriate at this stage for at least three reasons.  In the motion, plaintiff alleges that he is confined under conditions of confinement that violate the Eighth Amendment.  *See* Dkt. No. 6 at 8.  However, as discussed *supra*, plaintiff's Eighth Amendment claims related to his conditions of confinement in the RRU are dismissed for failure to state a claim.  Thus, plaintiff cannot establish a likelihood of success on the merits of his underlying claim and plaintiff's request for relief is denied.

Moreover, Burrell's transfer out of Upstate C.F. renders his requests for injunctive relief moot.  *See, e.g., Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility.").

Finally, it is noted that the relief requested by Burrell amounts to little more than an "obey the law" injunction.  "Obey the law" injunctions are vague, do not require defendants to do anything more than that already imposed by the law, subject the defendants to contempt

28

rather than statutorily prescribed sanctions, and are not readily capable of enforcement.  As such, these injunctions are not favored and the relief requested is not warranted here." *Rowe v. N.Y.S. Div. of Budget*, No. 11-CV-1150, 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 12, 2012) (citing *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435–36 (1941)).

For the foregoing reasons, plaintiff's motion for preliminary injunctive relief is denied.

## VI.  MOTION TO CERTIFY CLASS

Insofar as Burrell purports to bring this action not only on his own behalf but also on behalf of a class of other inmates "similarly situated," it is well settled that a class action cannot be maintained by a pro se litigant because non-attorneys may not represent anyone other than themselves.  *Miller v. Zerillo*, No. 07-CV-1719, 2007 WL 4898361, at *1 (E.D.N.Y. Nov. 2, 2007) (citing cases and recommending denial of class certification without prejudice until an attorney makes an appearance); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); 28 U.S.C. § 1654.  Accordingly, until such time as a motion seeking certification of the class has been filed demonstrating that the requirements of Rule 23 of the Federal Rules of Civil Procedure have been satisfied, this action shall be considered only as an action brought by plaintiff in his individual capacity.

## VIII.  CONCLUSION

Therefore, it is

ORDERED that

1.  Plaintiff's in forma pauperis application (Dkt. No. 3) is **GRANTED**;[11]

2.  The Clerk provide the Superintendent of the facility, designated by plaintiff as his

---

[11]  Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

current location, with a copy of plaintiff's Inmate Authorization, and notify the official that this action has been filed and that plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915;

3.   The Clerk of the Court provide a copy of plaintiff's Inmate Authorization to the Financial Deputy of the Clerk's Office;

4.   The Clerk of the Court is directed to amend the docket and terminate "similarly situated plaintiffs" as plaintiffs in this action;

5.   The following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b): (1) plaintiff's § 1983 claims for monetary damages against DOCCS and Central Office; (2) plaintiff's claims related to violations of DOCCS Directives; and (3) plaintiff's constitutional claims related to the grievance process;

6.   The following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment conditions-of-confinement claims; (2) Eighth Amendment claims related to plaintiff's hunger strike; (3) Fourteenth Amendment due process claims; (4) supervisory claims; (5) First Amendment free exercise claims; and (6) conspiracy claims; and (7) state law claims;[12]

7.   The following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) Eighth Amendment excessive force and failure to intervene claims against Hastings, Spinner, and Mainville; and

---

[12]  If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

(2) First Amendment retaliation claims against Fontain, Johnson, Nelson, Bullock, Niles, Sawyer, Rowe, Ozborne, Hastings, Mainville, and Spinner;

    8.   That DOCCS, Central Office, Hochul, Annucci, Noeth, Rodriguez, John Doe, St. Mary, Hess, Dumas, Campbell, Donnelly, Fye, Faucher, Uhler, Bishop, Stickey, Curing, Dearborne, Bradsford, Locke, Orbegozoi, Mathis, Mallette, Powers, Watkins, Delaney, Baynes, and Boile are **DISMISSED** as defendants herein;

    9.   Upon receipt of the documents for service from plaintiff, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and complaint to the Office of the Attorney General, together with a copy of this Decision and Order;

    10.  A response to the complaint be filed by defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

    11.  All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

    12.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions;

    13.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**;

14.  Plaintiff's motion for a preliminary injunction (Dkt. No. 6) is **DENIED**;

15.  Plaintiff's motion for class certification (Dkt. No. 5) is **DENIED**; and

16.  The Clerk serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

IT IS SO ORDERED.

Dated:   February 9, 2023
           Utica, New York.

_____
United States District Judge

32